## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF INDIANA
## HAMMOND DIVISION

| | | |
|---|---|---|
| ARCIDES SANTIAGO, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | NO. 2:05-CV-282 |
| | ) | |
| THE CITY OF EAST CHICAGO, | ) | |
| INDIANA, et al. | ) | |
| | ) | |
| Defendants. | ) | |

## OPINION AND ORDER

This matter is before the Court on: (1) Defendants' Motion to Strike Certain Matter Asserted as Fact by Plaintiff in Opposition to Defendants' Motion for Summary Judgment, filed on April 10, 2007; and (2) Defendants' Motion for Summary Judgment, filed on March 19, 2007.  For the reasons set forth below, Defendants' motion to strike is **GRANTED IN PART AND DENIED IN PART**.  Defendants' motion for summary judgment is **GRANTED**.  Accordingly, Plaintiff's claims are **DISMISSED** and the Clerk is **ORDERED** to close this case.

BACKGROUND

On July 21, 2005, Plaintiff, Arcides Santiago, an East Chicago Police officer, filed suit against Defendants, his employer the

City of East Chicago, Mayor George Pabey, individually and in his capacity as Mayor of the City of East Chicago, and Chief of Police Angelo Machuca, individually and in his capacity as Chief of Police for the City of East Chicago.  According to Santiago, he supported Robert Pastrick during the 2004 Democratic Special Election in East Chicago, Indiana.  After Mayor Pabey won that special election and was ultimately elected as Mayor of East Chicago, Santiago claims he was transferred within the East Chicago Police Department from the Gangs and Narcotics unit to Patrol due to his political support for Robert Pastrick, in violation of his First Amendment rights. Further, Santiago claims that the transfer constituted a demotion and, because he was not afforded a hearing before the transfer, his Due Process rights were violated.

Defendants have filed a motion for summary judgment claiming there are no genuine issues of material fact and they are entitled to judgment as a matter of law on all claims.  Defendants argue that Santiago's transfer within the ECPD was not made because of Santiago's political affiliation and did not constitute a demotion. Defendants have also filed a motion to strike many matters asserted as fact contained in Plaintiff's Appendix in Opposition to the Motion for Summary Judgment.  These motions will be addressed in turn.

MOTION TO STRIKE

Before the Court can rule on Defendants' Motion for Summary Judgment, it must address Defendants' motion to strike. Defendants have moved to strike various matters in 22 different paragraphs of Plaintiff's appendix of material facts. According to Defendants, portions of paragraphs 4, 5, 10, 17, 28, 29, 30, 31, 35, 36, 37, 42, 47 and 50 should be stricken because they contain factual assertions that are not supported by the citations referenced in Santiago's Statement of Genuine Issues. Defendants also seek to strike paragraphs 5, 16, 21, 25, 26, 27, 30, 51, 52 and 53 because they present matters that are inadmissable.

In general, motions to strike are disfavored. *Williams v. Jader Fuel Co.*, 944 F.2d 1388, 1405-06 (7th Cir. 1991). This is because these motions can be abused to serve merely as tactical tools of annoyance and delay to the opposing party and also waste judicial resources. Indeed, many factual disputes can be resolved through a reply brief rather than a motion to strike. However, it is also well settled that a party may not attempt to survive a motion for summary judgment by presenting a statement of facts that is unsupported by "appropriate citations to discovery responses, affidavits, depositions, or other admissible evidence." L.R. 56.1(a). "The purpose of the 56.1 statement is to identify for the Court the evidence supporting a party's factual assertions in an organized manner; it is not intended as a forum for factual or

3

legal argument." *Mayes v. City of Hammond*, 442 F.Supp.2d 587, 595 (N.D. Ind. 2006)(quoting *Malec v. Sanford*, 191 F.R.D. 581, 585 (N.D. Ill. 2000)).  When documents do not conform with the local rules, they are subject to being stricken. *Goltz v. University of Notre Dame du Lac*, 177 F.R.D. 638, 640 (N.D. Ind. 1997).


Factual Assertions in Plaintiff's Statement of Genuine
Issues that are Unsupported by the Referenced Citations[1]

Defendants seek to strike portions of paragraphs 4, 5, 10, 17, 28, 29, 30, 31, 35, 36, 37, 42, 47 and 50 of Plaintiff's Appendix of Material Facts, arguing that the paragraphs are not supported by the cited record.


Paragraph 4

Santiago states that " . . . Pabey appointed . . . two Commanders, Lourdes Vega-Torres and Cynthia Haynes."  While Santiago admits that the referenced citation shows only that Pabey appointed Cynthia Haynes, Santiago argues that "this" is sufficient to support an inference that Pabey also appointed Lourdes-Vega as Commander.  This Court disagrees and refuses to make such an inference. *Hadley v. DuPage County*, 715 F.2d 1238, 1243 (7th Cir.

_____

[1]The Court's ruling on this portion of Defendants' motion to strike is inconsequential.  Despite this Court striking certain "facts" that are disguised argument or are otherwise not properly before the Court, it will still consider the properly supported facts that are cited to in the record.

1983)(noting that Rule 56 requires citations to specific concrete facts establishing the existence of the truth of the matter asserted). Accordingly, the allegation that Pabey appointed Lourdes-Vega as Commander is not supported by the referenced citations and is therefore **STRICKEN** from paragraph 4 of Plaintiff's appendix.


Paragraph 5

Here, Santiago states, "[t]he Mayor of East Chicago traditionally has been involved in approving promotions in the Police Department." This statement is not supported by a specific citation to the record; rather it is more akin to argument. Indeed, this statement is extrapolated from the referenced citation showing only that the previous mayor, Mayor Pastrick, approved certain promotions within the ECPD on various occasions. This lone fact that a prior mayor was involved in certain promotions is insufficient to establish that the Mayor of East Chicago traditionally has been involved in approving promotions in the ECPD. Accordingly, it is **STRICKEN**. *Id.*


Paragraph 10

Santiago sets forth that Secondino Cruz spoke with Mayor Pabey "in an effort to assist Santiago in keeping his job and perhaps obtaining a promotion." The cited testimony of Cruz does not

support this statement.  Rather, it supports only that Cruz met
with Pabey in an effort to secure a promotion on behalf of
Santiago.  There is no mention that Cruz met with Pabey in an
attempt to allow Santiago to keep his job.  Accordingly, the
statement that Cruz spoke with Mayor Pabey in an effort to assist
Santiago in keeping his job is not supported by the record and,
therefore, **STRICKEN.**


Paragraph 17

This paragraph states "Pabey also expressed his hostility
towards Santiago in conversations with Jorge Garcia in 2004 and
2005."  The parties agree, and the Court will so oblige, that the
reference to 2005 should be and is **STRICKEN.**


Paragraph 28

This paragraph states that "Santiago testified that most jobs
in the Detective Bureau allow the officer to . . . work mostly
regular business hours."  This statement is not supported by
Plaintiff's referenced citation.  In fact, Santiago's testimony
leads to the opposite conclusion; that his job schedule as a
detective fluctuated.  (Santiago Dep. pp. 20-21).  As such, the
reference that most jobs in the Detective Bureau allow the officer
to work mostly regular business hours is **STRICKEN.**

Paragraph 29

Santiago asserts that the plaintiffs in the *Medina* case included, "Richard Medina, . . . Machuca, Nick Kokot, John Nava, John Ramos, Miguel Santos, David Gemeinhart, Fard Elliot, and Kevin Herretos."  Defendants complain that Santiago did not include Xavier Herrera as a plaintiff.  Santiago concedes that he incorrectly omitted Xavier Herrera as a plaintiff.  This omission is therefore **STRICKEN** and the paragraph is amended accordingly.


Paragraph 30

This paragraph provides that "[Pabey] indicated that in East Chicago, the Mayor approves promotions in the Police Department." Pabey's cited testimony does not go nearly as far as Plaintiff's statement.  The referenced citation comes from Mayor Pabey's testimony in *Medina*, given when he was the East Chicago Chief of Police and Mayor Pastrick was the Mayor of East Chicago.  According to Pabey's testimony, Pastrick approved certain promotions in the ECPD.  Plaintiff's overly broad statement implying that all Mayors in East Chicago approve promotions within the ECPD is unsupported by the referenced citation.  Accordingly, this phrase is **STRICKEN.**


Paragraph 31

There are two subparagraphs at issue here.  Subparagraph 31(b) asserts that Frank Smith was transferred from the Gangs and

7

Narcotics Unit to Patrol as a Roving Lieutenant.  However, the referenced citations do not state that Smith was transferred from the Gangs and Narcotics Unit.  In fact, the record shows that Smith was transferred from the Adult Unit.  (Machuca Dep. pp. 61-63, 69-70).  Plaintiff concedes that Defendants are correct in this regard.  Accordingly, the reference that Frank Smith was transferred from the Gangs and Narcotics Unit is **STRICKEN**.

Subparagraph 31(e) states that David Gemeinhart "was service as a uniformed officer with a Task Force."  The citations do not support that Gemeinhart was serving as a "uniformed officer" and, therefore, that is **STRICKEN**.

Paragraph 35

Santiago states that "[w]ith a shortage of Patrol Officers, Machuca did not delay 'reorganizing' the Gangs and Narcotics Unit. He drew all of its new members from the Patrol Division, thus exacerbating the shortage he already had."  Santiago's assertion that the Patrol shortage was "exacerbat[ed]" by the restructuring of the Gangs and Narcotics Unit is certainly not directly spelled out by the cited record.  However, Machuca claimed that he did not have enough patrol officers and patrol officers were used to fill the Gangs and Narcotics Unit.  Thus, the Court will deny Defendants' request to strike anything in this paragraph.

Paragraph 42

Here, Santiago stated that officers Medina, Verbich, Gransberry, Ligon-Hayes and Nava were promoted and that "all had come from the Detective Bureau." Plaintiff concedes that Vrbich came from Patrol. Accordingly, paragraph 42 is amended to read that four out of five people whom Machuca promoted had prior experience with the Detective Bureau.

Paragraph 47

Santiago states that "[t]he only disciplinary action which Santiago had against him was for failing to turn in an accident report . . .." The record shows that Santiago was subject to numerous disciplinary actions, including three suspensions. Accordingly, this paragraph is amended accordingly.

Paragraphs 36, 37 and 50

These paragraphs contain no citations to the record and are **STRICKEN**. See L.R. 56.1

Plaintiff's Failure to Provide Transcripts from Medina Trial

Defendants request the Court strike paragraphs 5, 16, 21, 25, 26, 27, 30, 51, 52 and 53 of Santiago's Statement of Genuine Issues, which rely on trial testimony from a past lawsuit, *Medina v. City of East Chicago*. Defendants complain that Plaintiff never

disclosed or produced any of the *Medina* transcripts prior to filing his opposition to summary judgment.   In response, Plaintiff claims that he never had possession or control of the *Medina* trial transcripts during discovery and that the transcripts are largely being used for impeachment purposes.   Despite this conflict, Defendants do not claim to have suffered any prejudice as a result of this non-disclosure.   In fact, they assert that the testimony in the *Medina* case is consistent with the testimony in this case. Therefore, this Court declines to strike the requested paragraphs.

Inadmissible Deposition testimony

Paragraph 16

This paragraph states, "Cruz noted that when George Pabey was Chief of Police, he promoted people because they were politically on the right side.   East Chicago is well known for that."   This statement from Cruz suffers from foundational problems.   It is hard to fathom how Cruz had personal knowledge of then Police Chief Pabey's promotion criteria since he retired from the ECPD before George Pabey became Chief of Police and admitted that he was never involved in any decision Pabey made as Chief of Police.   (Cruz Dep. pp. 6-7, 22-24; Pabey Dep. p. 13-14).   For these reasons, the statement should be stricken.   Fed. R. Evid. 602.   Foundational problems aside, this statement also suffers from being conclusory in nature, which also compels it being stricken.   *First Commodity*

*Traders, Inc. v. Heinold Commodities, Inc.*, 766 F.2d 1007, 1011 (7th Cir. 1985).


Paragraph 21

Here, Santiago presents the testimony of George Garcia, who describes statements supposedly made to him by Al Velez.  This is hearsay, so it cannot stand for the truth of the matter asserted. Consequently, the comments cannot be presented as "facts" and are not enough to preclude summary judgment.  *Haywood v. Lucent Technologies, Inc.*, 323 F.3d 525, 533 (7th Cir. 2003).


MOTION FOR SUMMARY JUDGMENT

Facts

The City of East Chicago, Indiana ("East Chicago") is a municipal corporation.  (Answer ¶ 4).  George Pabey ("Mayor Pabey") was the former Chief of Police for the ECPD and became Mayor of East Chicago on December 29, 2004, and continues to serve in that capacity to date.  (Answer ¶ 5).  Angelo Machuca ("Chief Machuca") was appointed Chief of Police for the East Chicago Police Department by Mayor Pabey in January 2005, and continues to serve in that capacity to date.  (Answer ¶ 6).  Arcides Santiago ("Santiago") is an officer with the East Chicago Police Department ("ECPD").  (Answer ¶ 3).

The ECPD is composed of three divisions: Patrol Division

11

("Patrol"); Criminal Investigation Division ("Detective Bureau"); and the Service Division. (Rivera Dec. ¶ 3). The Detective Bureau is further divided into three units: Juvenile, Adult, and Gangs and Narcotics. (Rivera Dec. ¶ 4).

Santiago was appointed to the ECPD in April 1989 and served in Patrol until approximately January 2000. (Rivera Dec. ¶ 20; Santiago Dep. pp. 8, 10). During this time, Santiago performed traffic accident investigation duties on a fill-in basis. (Santiago Dep. pp. 9-10; Machuca Dec. ¶ 17). In 1993, Santiago completed a course in Grade Crossing Collision Investigation, which was sponsored by the Indiana Association of Certified Accident Investigators. (Rivera Dec. ¶ 22; Santiago Dep. p. 38). Santiago was transferred from Patrol to the Detective Bureau in January 2000.

In the Detective Bureau, Santiago was first assigned to the Stolen Auto Unit, which was eventually subsumed by the Adult Unit. (Rivera Dec. ¶ 20; Santiago Dep. pp. 10-11). Santiago was reassigned from the Adult unit to the Gangs and Narcotics Unit in June 2003. (Rivera Dec. ¶ 20).

In 2002, Mayor Pabey served as Chief of Police in East Chicago, appointed by then Mayor Robert Pastrick. (Pabey Dep. pp. 13-14). During that time, Pabey would sometimes ask Mayor Pastrick for advice and Mayor Pastrick would get involved in the decision making process for giving promotions within the ECPD. (Pabey

testimony in *Medina v. City of East Chicago*, p. 64-65).

Santiago supported Robert Pastrick's candidacy for reelection for Mayor in 2004. (Santiago Dep. pp. 43-53). Santiago sent a letter to approximately 200 customers from a business he owned, advising those customers to vote for Robert Pastrick. (Santiago Dep. p. 43). In addition, Santiago's wife was Democratic Precinct Committeewoman who assisted Pastrick, and his father was involved in Mayor Pastrick's campaign in 2004, passing out brochures. (Santiago Dep. p. 44; Santiago Dec. ¶¶ 3-4).

According to George Garcia, one of Santiago's friends, before the October 2004 Democratic Primary election in East Chicago, Pabey told Garcia that he did not like Santiago and that he was going to "put a foot up his ass," and that Garcia should stay away from Santiago. (Garcia Dep. pp. 8, 22-23, 45-47). Garcia did not know why Mayor Pabey disliked Santiago. (Garcia Dep. p. 51).

In October 2004, Pabey defeated incumbent Mayor Robert Pastrick in the special Democratic primary election. (Pabey Dep. p. 18). In December 2004, Pabey won the special general election, and was sworn in as Mayor of East Chicago. (Pabey Dep. p. 8).

According to Secondino Cruz, he had a conversation with Mayor Pabey just after Mayor Pabey took office. (Cruz. Dep. pp. 7-9). Cruz approached Mayor Pabey asking him to give Santiago a promotion. (Cruz Dep. pp. 14-15). While Mayor Pabey told Cruz that he was not upset with Santiago, he also stated that he would

not seek to influence a promotion for Santiago because Santiago went against Mayor Pabey in the election and Santiago's father had distributed literature which Mayor Pabey believed unfairly portrayed his role in a shooting that took place while Mayor Pabey was an East Chicago police officer. (Cruz Dep. pp. 10-11, 17-20). After his meeting with Mayor Pabey, Cruz believed that Mayor Pabey wanted to eliminate the way politics had influenced the ECPD in the past. (Cruz Dep. pp. 25-26).

In January 2005, Mayor Pabey appointed Chief Machuca as Chief of the ECPD. (Machuca Dep. p. 17). Since that time, Chief Machuca has had conversations with Mayor Pabey concerning the ECPD on approximately ten occasions. (Machuca Dep. p. 51). Mayor Pabey also appointed the Deputy Chief of the ECPD as well as Commander Cynthia Haynes. (Machuca Dep. pp. 20-21, 58-59, 61). The month after Chief Machuca was appointed he determined that, due to integrity and productivity problems with the Detective Bureau's Gangs and Narcotics Unit, it was necessary to disband and reorganize that unit. (Machuca Dec. ¶¶ 5-6). As such, the ECPD planned to conduct an exhaustive reassignment process during the spring of 2005. (Rivera Dec. ¶ 5; Machuca Dec. ¶ 6).

On February 24, 2005, all ECPD officers were informed through several memoranda that the ECPD would consider applications for reassignment to the Detective Bureau's Juvenile, Adult and Gangs and Narcotics units. (Rivera Dec. ¶7; Machuca Dec. ¶7; Santiago

14

Dep. pp. 202-03, Ex. 164).  Reassignment eligibility lists were posted in the ECPD headquarters to sign for officers interested in reassignment to Adult, Juvenile and Gangs and Narcotics.  (Rivera Dec. ¶ 8; Santiago Dep. pp. 63-65, Ex. 161).  Santiago signed only the eligibility list posted for reassignment to Adult.  (Santiago Dep. p. 64).

After the eligibility lists were compiled, a screening board consisting of Hector Rivera and Clifton Rhodes conducted interviews and ranked applicant officers to determine who would be recommended to Chief Machuca for reassignment.  (Rivera Dec. ¶¶ 9-11).  Chief Machuca, then, made the ultimate decision as to where officers would be reassigned as a result of the disbanding and reorganization of the Gangs and Narcotics unit.  (Machuca Dec. ¶¶ 9-18).

Nineteen officers applied, were interviewed, and ranked for reassignment in the Gangs and Narcotics unit.  (Rivera Dec. ¶ 14). Of these, seven out of the top eight were ultimately selected for the reorganized Gangs and Narcotics unit: George Cossey, Jorge Valdez, Kevin Harretos, Edwardo Hernandez, Edward Rodriguez, Shawn Pitts and Jose Rivera.  (Rivera Dec. ¶ 15; Santiago Dep. pp. 22-23, 69-71; Machuca Dec. ¶ 9).  Each of these seven officers were transferred from Patrol and were deemed qualified for their new positions.  (Santiago Dep. pp. 70-71; Machuca Dec. ¶ 9).

All of the former Gangs and Narcotics unit officers were

15

transferred to other positions in the ECPD, including: Arcides Santiago, Guan Hillsman, Louis Arcuri, Tony Gilbert and Jose Velez. (Rivera Dec. ¶ 17; Santiago Dep. pp. 57-58; Machuca Dec. ¶ 11). Santiago, Hillsman and Arcuri were transferred to Patrol, while Gilbert and Velez were transferred within the Detective Bureau to the Juvenile unit. (Rivera Dec. ¶ 17; Santiago Dep. pp. 57-58; Machuca Dec. ¶¶ 11-14). Chief Machuca knew that Hillsman and Arcuri supported Mayor Pastrick in some election before 2000. (Machuca Dep. in Medina, p. 122). And, Santiago believes Gilbert to be a Mayor Pabey supporter. (Santiago Dep. p. 19). However, there is no designated evidence as to which candidate any of these officers actually supported during the 2004 Special Democratic primary election between Mayor Pastrick and Mayor Pabey. Neither is there any evidence of whether Chief Machuca or Mayor Pabey were aware of any of these officers' political affiliations.

As of January 2005, Gilbert had been employed by the ECPD for approximately 14 years and had served in the Gangs and Narcotics unit of the Detective Bureau since November 1997, (Rivera Dec. ¶ 18); Velez had been employed by the ECPD for approximately 12 years and had served in the Gangs and Narcotics unit of the Detective Bureau since January 2000, (Rivera Dec. ¶ 19); Santiago had been employed by the ECPD for approximately 18 years and had served in the Detective Bureau since January 2000, and had served in the Gangs and Narcotics Unit since June 2003, (Rivera Dec. ¶ 20;

16

Santiago Dep. p. 8).  Chief Machuca transferred Gilbert and Velez
to Juvenile based on their lengthy experience investigating gang-
related crime in the Gangs and Narcotics unit.  (Rivera Dec. ¶¶ 17-
20; Machuca Dec. ¶¶ 11-14).  Chief Machuca found that their
experience in the Gangs and Narcotics unit was well-suited for work
in Juvenile because work in that unit focuses largely on youth gang
crime.  (Rivera Dec. ¶¶ 17-20; Machuca Dec. ¶¶ 11-14).  Chief
Machuca did not consider transferring Santiago to Juvenile because
Santiago had served in the Gangs and Narcotics unit for less than
two years.  (Machuca Dec. ¶ 14).

All of the officers who signed the Adult unit eligibility
list, including Santiago, completed an application examination and
were interviewed by the screening board, but none of the officers
were selected for reassignment to Adult.  (Rivera Dec. ¶ 13;
Machuca Dec. ¶ 16; Santiago Dep. pp. 64-67, 119, Ex. 161).  Chief
Machuca decided not to reassign any new officers to Adult due to a
manpower shortage.  (Machuca Dec. ¶ 16).  Because Santiago had
previous experience as a fill-in accident investigator, Chief
Machuca decided to transfer him to Patrol.  (Santiago Dep. pp. 9-
10; Machuca Dec. ¶ 17).

In June 2005 Santiago was reassigned to the Patrol Division
where he was assigned accident investigation duties and received no
change in his pay or benefits.  (Machuca Dec. ¶ 17; Rivera Dec. ¶
20; Santiago Dep. pp. 22-23).  Santiago asked Chief Machuca about

17

being put on Patrol, to which Chief Machuca informed him that it was only temporary.  (Santiago Dep. pp. 135-36).

Chief Machuca does not know who Santiago supported for Mayor of East Chicago in the 2004 election, but assumed that Santiago supported Robert Pastrick based upon some of the officers Santiago associated with.  (Machuca Dep. pp. 159-160).  Chief Machuca stated that Mayor Pabey was neither directly nor indirectly involved in his decision to disband and reorganize the Gangs and Narcotics unit.  (Machuca Dec. ¶ 18).  Similarly, Mayor Pabey was not involved in Chief Machuca's decision as to which officers would be reassigned and which units they would be reassigned to.  (Machuca Dec. ¶ 18).  Chief Machuca indicated that Santiago's political affiliations were not relevant to his decision regarding his reassignment.  (Machuca Dec. ¶ 19).

Section 502 of the ECPD Rules and Regulations states that demotions must be for good cause.  (Rivera Dec. ¶¶ 24-29).  A "demotion" under section 502 only occurs where an officer's formal rank is diminished, such as when an officer is demoted from Lieutenant to Sergeant.  (Rivera Dec. ¶ 25).  Santiago's transfer to Patrol did not involve an alteration of his official rank, which was Master Police Officer, Grade 1.  (Rivera Dec. ¶¶ 24-28).


Summary Judgment Standard

The standards that generally govern summary judgment motions

18

are familiar.  Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is proper only if it is demonstrated that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  *See Nebraska v. Wyoming*, 507 U.S. 584, 590 (1993); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).  In other words, the record must reveal that no reasonable jury could find for the nonmovant. *Karazanos v. Navistar Int'l Transp. Corp.*, 948 F.2d 332, 335 (7th Cir. 1991); *see also Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250 (1986).  In deciding a motion for summary judgment, a court must view all facts in the light most favorable to the nonmovant. *Anderson*, 477 U.S. at 255; *NUCOR Corp. v. Aceros Y Maquilas De Occidente*, 28 F.3d 572, 583 (7th Cir. 1994).

The burden is upon the movant to identify those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits," if any, that the movant believes "demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323.  Once the movant has met this burden, the nonmovant may not rest upon mere allegations but "must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); *Becker v. Tenenbaum-Hill Assocs., Inc.*, 914 F.2d 107, 110 (7th Cir. 1990); *Schroeder v. Lufthansa German Airlines*, 875 F.2d 613, 620 (7th Cir. 1989). "Whether a fact is material depends on the substantive law

underlying a particular claim and 'only disputes over facts that *might affect the outcome* of the suit under governing law will properly preclude the entry of summary judgment.'"   *Walter v. Fiorenzo*, 840 F.2d 427, 434 (7th Cir. 1988) (emphasis in original) (citing *Anderson*, 477 U.S. at 248).

"[A] party who bears the burden of proof on a particular issue may not rest on its pleading, but must affirmatively demonstrate, by specific factual allegations, that there is a *genuine* issue of material fact which requires trial." *Beard v. Whitley County REMC*, 840 F.2d 405, 410 (7th Cir. 1988) (emphasis in original); *see also Hickey v. A.E. Staley Mfg.*, 995 F.2d 1385, 1391 (7th Cir. 1993). Therefore, if a party fails to establish the existence of an essential element on which the party bears the burden of proof at trial, summary judgment will be appropriate.  In this situation, there can be "'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 323.


First Amendment Retaliation Claim

Generally, "public employees may not be made to suffer adverse job actions because of their political beliefs." *Carlson v. Gorecki*, 374 F.3d 461, 464 (7th Cir. 2004)(citations omitted). Thus, with certain exceptions made for employees in policymaking or

confidential positions, it is "well established that hiring, firing, or transferring employees based on political motivation violates the First Amendment." *Hall v. Babb*, 389 F.3d 758, 762 (7th Cir. 2004).  For a plaintiff to make out a prima facie case for a First Amendment violation, he must demonstrate: (1) that his conduct was constitutionally protected; and (2) that the protected conduct "was a substantial or motivating factor in the employment decision." *Id.*  If a plaintiff makes the required prima facie showing, the burden then shifts to the defendants to demonstrate a legitimate, non-political reason for the decision.  *Id.*

> Defendants are Entitled To Summary Judgment on
> Plaintiff's First Amendment Claim Because There
> is No Genuine Issue of Material Fact that Would Establish
> <u>Plaintiff's Transfer to Patrol was Politically Motivated</u>

Plaintiff claims that he was transferred to Patrol from the Gangs and Narcotics unit due to his political support for Mayor Pastrick in the 2004 special democratic primary.  However, as detailed below, Plaintiff has failed to make a prima facie showing that his transfer to Patrol was politically motivated.

Defendants do not contend that Santiago had a policymaking or confidential position.  Nor do they argue that Santiago's support for Mayor Pastrick in the 2004 East Chicago Democratic Primary does not constitute protected activity.  Thus, Santiago must prove by a preponderance of the evidence that his support of Mayor Pastrick was a substantial or motivating factor in the decision to transfer

him to Patrol.  *Nelms v. Modisett*, 153 F.3d 815, 818 (7th Cir. 1998).  Our Circuit has noted that:

> [this] burden is not insignificant.  A disgruntled employee fired [or transferred] for legitimate reasons would not be able to satisfy his burden merely by showing that he carried the political card of the opposition party or that he favored the defendant's opponent in the election.

*Nelms*, 153 F.3d at 818.

For Santiago to prove that his political activities were a substantial or motivating factor in Defendants' decision to transfer him to Patrol, he must first prove that decision makers had actual knowledge of his political affiliation.  *Id.* at 819. "Stray remarks in the workplace . . . cannot justify requiring an employer to prove that its decisions were based on legitimate criteria.  Nor can statements made by non-decision makers or statements made by decision makers unrelated to the decisional process itself suffice to satisfy the plaintiff's burden in this regard."  *Id.* (citation and internal quotation omitted).

Santiago believes that Mayor Pabey was the one who decided to transfer him from Gangs and Narcotics to Patrol.  In fact, from a review of his brief it is clear that nearly all of Santiago's discrimination allegations center around Mayor Pabey's supposed dislike towards him.  Santiago relies on three facts in support of his belief that Mayor Pabey was involved in the decision to transfer him to Patrol.  First, Santiago points to evidence that

Mayor Pastrick made political-based promotions with then Chief of Police Pabey during Pastrick's tenure as mayor.  Second, Mayor Pabey had discussions with Chief Machuca on approximately ten occasions regarding the ECPD.  And, third, Mayor Pabey appointed the Deputy Chief and a Commander in the ECPD.  Contrary to Santiago's belief, this evidence, considered either individually or in the aggregate, is not proof that Mayor Pabey had any input on the decision of transferring Santiago.  Indeed, the fact that a former Mayor of East Chicago got involved in certain promotions within the ECPD does nothing to show that Mayor Pabey ever engaged in such actions or that he did so with regard to Santiago's transfer to Patrol.  Likewise, the mere fact that Mayor Pabey had discussions with Chief Machuca regarding the ECPD does not show that Mayor Pabey got involved in the decision to transfer Santiago to Patrol.  To reach an opposite conclusion would require speculation.  And when the evidence provides for only speculation or guessing, summary judgment on that point is appropriate. *Hedberg v. Indiana Bell Telephone Co., Inc.*, 47 F.3d 928, 931-32 (7th Cir. 1995).  Thus, whether or not Mayor Pabey knew of Santiago's political persuasion or had any animosity towards him is immaterial as there are no facts supporting the notion that Mayor Pabey had any input on the decision to transfer Santiago to Patrol.

The evidence reveals that Chief Machuca and the screening board consisting of Hector Rivera and Clifton Rhodes are the only

parties that had input in the decision making process.   The
screening board would evaluate each candidate and give Chief
Machuca recommendations; Chief Machuca would then be the ultimate
decision maker.   There is no contention that any member of the
screening board engaged in any political discrimination.   Thus, the
Court's inquiry focuses on Chief Machuca.   The only evidence
concerning Chief Machuca's knowledge of Santiago's political
persuasion was given in Chief Machuca's deposition testimony.
There, Chief Machuca was asked whether or not he knew show Santiago
supported for Mayor in the 2004 election.   Chief Machuca responded
by saying that he did not know who Santiago supported for Mayor of
East Chicago in the 2004 election.   He went on to state that he
assumed Santiago supported Robert Pastrick based upon some of the
officers Santiago associated with.   Chief Machuca's knowledge that
Santiago associated with Pastrick supporters, along with Santiago's
political support for Pastrick, raises a material question as to
Chief Machuca's knowledge.   However, even if Chief Machuca was
aware of Santiago's political affiliation, his claim must fail
because Santiago has failed to present any evidence that would
support a finding that the decision to transfer him to Patrol was
politically motivated.

Notably, Santiago presents no direct evidence that political
retaliation was a motivating factor in his transfer.   Rather, he
relies on inferences he urges can be drawn from, what he

characterizes as, a general pattern and culture of political hiring, promotion and transfers by the East Chicago Police Department. However, any alleged past pattern of unlawful political patronage that does not implicate Chief Machuca cannot be considered as Chief Machuca was the one who decided to transfer Santiago. See e.g. *Hall*, 389 F.3d at 764 (7th Cir. 2004)(noting that a showing of past political patronage may sometimes support a finding of political motivation, it must implicate the decision maker).

Focusing on Chief Machuca's conduct, this Court finds no "pattern" of political decision making. Santiago complains that the three officers transferred to Patrol from the Gangs and Narcotics unit - Hillsman, Arcuri and Santiago - were all Mayor Pastrick supporters. The problem with this argument is that it is not supported by the record. There is insufficient evidence to support the inference that Chief Machuca knew that either Hillsman or Arcuri supported Mayor Pastrick in the 2004 election over Mayor Pabey. The only evidence in the record to this point concerns Chief Machuca's knowledge that Hillsman and Arcuri supported Mayor Pastrick in some election sometime before 2000. (Machuca Dep. in Medina p. 122). Mayor Pabey was not even a candidate in that election. Thus, Plaintiff's evidence does little to shed light on whether Hillsman or Arcuri supported Mayor Pastrick or Mayor Pabey in the 2004 primary election, and sheds even less light on the

issue of whether Chief Machuca knew of such.

Santiago also complains that the officers that were transferred into the Gang and Narcotics unit were "overwhelmingly supporters of Pabey." (Mem. In Opp. p. 11). The problem with this argument, like the one before it, is that it is not supported by the evidence. Tellingly, Santiago even admits that there is no evidence of the political affiliation of most of the seven officers transferred into the Gangs and Narcotics unit: Cossey, Valdez, Hernandez, Rodriguez and Rivera. As to the other officers - Herretos, Pitts and Nava - Santiago fails to designate any evidence that Chief Machuca knew which candidate any of these officers supported in the 2004 election.

Santiago also makes much ado about his qualifications being greater than the other officers transferred from Patrol to the Gangs and Narcotics unit. This argument can not go very far in light of this Circuit's precedent that "[f]acts suggesting that a qualified person of one type was fired, and a person of another type was hired make out a prima facie case of race or sex discrimination, but they do not suffice to show discrimination based upon political affiliation." *Nelms*, 153 F.3d at 818, n.4 (quoting *Garrett*, 961 F.2d at 633). Notably, Santiago does not assert that the officers transferred from Patrol to the Gangs and Narcotics unit were unqualified. Moreover, there is no evidence that Chief Machuca knew of the political affiliation of those

26

officers transferred from Patrol to reconstitute the Gangs and Narcotics unit. Nevertheless, Santiago's qualifications are irrelevant as all of the Gangs and Narcotics unit officers were transferred out of that unit based on Chief Machuca's determination that the unit needed to be disbanded and reconstituted. As such, the evidence simply is insufficient to show political discrimination.

> Even if Santiago had established a
> prima facie case, Defendants proffered a
> <u>legitimate, non-political reason for his transfer</u>

Here, even if Santiago had established a prima facie case, summary judgment would still be appropriate because Defendants have produced a legitimate nonpolitical reason for their decision to transfer Santiago to Patrol - the restructuring of the Narcotics and Gangs unit.

Chief Machuca had integrity and productivity issues with the Narcotics and Gangs unit, which he felt could only be cured by replacing all of the then-existing officers. A reorganization is a legitimate reason to transfer someone who is performing satisfactorily. *Garrett*, 961 F.2d at 634(holding reorganizing is a legitimate reason to terminate an employee who is performing satisfactorily). Santiago does not dispute that the Gangs and Narcotics unit was entirely disbanded and reconstituted with other officers. In fact, he participated in applying for other positions

within the ECPD.   Nor does he dispute that each of the seven officers selected for reassignment into the Gangs and Narcotics unit were ranked by the Screening Board among the top eight of the nineteen officers who applied for reassignment to that unit. Instead, relying on his prior argument in support of his prima facie case, Santiago claims that Chief Machuca's decision to disband the Gangs and Narcotics unit and transfer him to Patrol was in an effort to punish Pastrick supporters and promote Mayor Pabey supporters.   However, as discussed above, this argument is simply not substantiated by the record.

Santiago's Due Process Claim Must Fail
Because His Transfer from Gangs and Narcotics
to Patrol was not a Demotion for Due Process Purposes.

Santiago claims that his being transferred to Patrol from Gangs and Narcotics unit violated his Fourteenth Amendment right to due process.   To prove this claim, Santiago must show "(1) that [he] had a [] protected property interest, (2) that [he] suffered a loss of that interest amounting to a deprivation, and (3) that the deprivation occurred without due process of the law." *Allen v. Martin*, 460 F.3d 939, 946 (7th Cir. 2006)(quoting *Kiddy-Brown v. Blagojevich*, 408 F.3d 346, 360 (7th Cir. 2005)).

Santiago argues that he had a protected property interest in his employment in the Gangs and Narcotics unit and his transfer to Patrol was a deprivation of that interest.   "A protected property

28

interest in employment can arise from a state statute, regulation, municipal ordinance, or an express or implied contract . . .." *Kiddy-Brown*, 408 F.3d at 360.  Defendant relies on Indiana Code section 36-6-3-4(c), which states that an officer shall not be dismissed or demoted without a hearing.  Moreover, the ECPD's Rules and Regulations Handbook states that a "promotion" or "demotion" only occurs where an officer's formal rank is adjusted.  (Rivera Dec. ¶ 25).  The issue then becomes whether Defendant's transfer from Gangs and Narcotics to Patrol is a "demotion" for due process purposes.

Courts have generally interpreted demotions giving rise to due process claims to entail more than a mere change in title, and assessed whether the demotion included any pecuniary dimensions. *Sonnleitner v. York*, 304 F.3d 704, 716 (7th Cir. 2002); *Bordelon v. Chicago School Reform Board of Trustees*, 233 F.3d 524, 531 (7th Cir. 2000).  Santiago's formal ECPD ranking - Master Police Officer, Grade 1 - remained unchanged from January 2005 to the present.  Thus, his transfer to Patrol from Gangs and Narcotics did not affect his formal ranking.  In addition, Santiago admitted that his pay was not diminished when he was transferred to Patrol and does not argue that the transfer caused some other pecuniary loss.

Nevertheless, Santiago claims that his transfer to Patrol can be considered a demotion because Mayor Pabey and Chief Machuca believed working in the Detective bureau was more appealing than

working in Patrol.  In support of this notion, Santiago relies solely on *Indianapolis v. Sherman*, 409 N.E.2d 1202 (Ind. App. Ct. 1980).  In *Sherman*, an officer brought suit against the city claiming that he had been improperly reduced in rank from Technical Captain to Captain by not having been afforded either notice of his demotion or a hearing.  The issue was whether or not "Technical Captain" was a rank or merely a status within the Indianapolis Police Department.  To decide this issue, the court looked at more than the formal guidelines of the Indianapolis Police Department, including internal memoranda and pay.  The evidence presented in that case showed that Indianapolis Police Department's internal documents described Technical Captain as being a rank above Captain.  The evidence also showed that the Technical Captain position had a higher rate of pay than the Captain position.  Based on this evidence, the court found that "Technical Captain" was a rank within the police department and the transfer to "Captain" was a demotion.  Accordingly, because the officer was not given a hearing prior to the demotion, his due process rights were violated.

Unlike the evidence in *Sherman*, there is no documentary evidence from the ECPD supporting the conclusion that Santiago's position in Gangs and Narcotics was a rank or that transfer to Patrol was a demotion.  The inter-department memorada regarded Santiago's move from Gangs and Narcotics as a "transfer" and a "re-

assignment."  Moreover, Santiago does not claim that he lost any pecuniary benefits from being transferred from Gangs and Narcotics to Patrol.  Therefore, the transfer from Gangs and Narcotics unit to Patrol was not a demotion and Santiago was not entitled to a hearing prior to that transfer.  Accordingly, the due process claim must be dismissed.


Santiago has Withdrawn his Indiana Constitutional Claim

Santiago has voluntarily withdrawn his claim under Article I, Section 9 of the Constitution of the State of Indiana. (Pl. Response, p. 19).  Accordingly, this claim is dismissed.


CONCLUSION

For the reasons set forth above, Defendants' motion to strike is **GRANTED IN PART AND DENIED IN PART**.  Defendants' motion for summary judgment is **GRANTED**.  Accordingly, Plaintiff's claims are **DISMISSED** and the Clerk is **ORDERED** to close this case.


DATED:  June 26, 2007                    **/s/RUDY LOZANO, Judge**
                                         **United States District Court**